IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. CROSS, | ) CASE NO. 4:10 CV 1647 |
| | ) |
| Plaintiff, | ) JUDGE DONALD C. NUGENT |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) **REPORT & RECOMMENDATION** |
| Defendant. | ) |

## Introduction

Before me by referral[1] is an action by Michael J. Cross under 42 U.S.C. § 405(g) seeking judicial review of a 2009 decision of the Commissioner of Social Security denying Cross's applications for disability insurance benefits and supplemental security income.[2] After the Commissioner answered Cross's complaint[3] and filed the record,[4] the parties submitted briefs on the merits.[5] The Commissioner filed a reply in opposition to Cross's brief.[6]

---

[1] Non-document order of July 28, 2010.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 11 (Cross's fact sheet); ECF # 13 (Commissioner's brief and charts); ECF # 15 (Cross's brief).

[6] ECF # 16.

For the reasons that follow, I will recommend that the Commissioner's decision be affirmed as supported by substantial evidence.

## Facts

**A.    Background**

Cross, a 30 year old single male,[7] claimed that he became disabled in 2004.[8] He has a high school education and previously worked as a hand packager and press operator.[9] But, Cross further stated that he always got fired or quit whenever he had a job.[10] He lived with his grandmother for several years and before that lived at home with his mother.[11] He was briefly incarcerated in 2004 for petty theft and spent a year on probation following his release.[12]

Medically, Cross testified at his 2007 hearing to frequent panic attacks, problems interacting with people, major mood swings, lack of concentration, and chronic pain.[13] He further stated that standing makes the pain worse.[14] He had been prescribed numerous

---

[7] Transcript ("Tr.") at 14.

[8] *Id*. at 22.

[9] *Id*.

[10] *Id*. at 16.

[11] *Id.* at 33.

[12] *Id.* at 33-34.

[13] *Id.* at 40-46.

[14] *Id*. at 46.

medications, but, according to Cross, none of them "worked."[15] That said, however, Cross asserted that his treating physician never recommended treatment by a psychologist or psychiatrist.[16] Cross further said that he naps for two hours during the day, has no visitors or friends, and has not dated since high school.[17] In addition, Cross's weight steadily increased from 258 pounds in 2004 to 272 pounds in 2007.[18]

**B.     The ALJ's decision**

The Administrative Law Judge (ALJ) determined at step two of the sequential evaluation process that Cross had the following severe impairments: degenerative disc disease of the lumbosacral spine, obesity, depressive disorder, and panic disorder.[19] The ALJ did not find that Cross was severely impaired by bipolar disorder; headaches; or neck, hip, and shoulder problems.[20]

At step three, the ALJ determined that none of these impairments met or medically equaled any listed impairments.[21] In doing so, the ALJ relied on assessments by the state agency consulting psychologists who concluded that Cross's depressive disorder and panic

---

[15] *Id*. at 40.

[16] *Id*. The November 2005 treatment notes from the treating physician, Albert Buch, M.D., indicate that Cross refused to see a psychologist or psychiatrist. *Id*. at 192.

[17] *Id.* at 47-48.

[18] *Id.* at 14.

[19] *Id.* at 12.

[20] *Id.* at 13.

[21] *Id.*

disorder produced only mild to moderate restrictions in daily life and no "marked" limitations.[22]

The ALJ, accordingly, made the following residual functional capacity (RFC) finding:

> [Cross] ... has the residual functional capacity to perform light work ... with certain modifications. He can stand for 30 minutes to an hour before changing positions for two to three minutes each hour; may perform no crawling or climbing of ladders, ropes or scaffolds but may perform other postural movements; must have no concentrated exposure to excessive cold; is limited to simple unskilled work; must have no more than occasional interaction with the public; and must have no more than specified interaction with coworkers.[23]

In making this finding as to mental limitations, the ALJ noted that Cross has not required any inpatient hospitalizations, partial hospitalization or crisis stay for any mental problems.[24] Moreover, the ALJ observed that Cross refused to see a psychiatrist or psychologist and had experienced "significant improvement" when he took his medications.[25] He also decided that the RFC accommodated any remaining moderate limitation by restricting Cross to unskilled work and by requiring that he have only occasional interaction with the public and superficial interaction with coworkers.[26]

Moreover, the ALJ pointedly stated that Cross "has done little to help himself." The ALJ found, for example, that although Cross complained that medications did not help, the

---

[22] *Id*. at 14-15.

[23] *Id.* at 15.

[24] *Id*. at 21.

[25] *Id.*

[26] *Id.*

evidence contradicted that.[27] In addition, the ALJ observed that Cross's primary care physician suspected that Cross had sold his pain medication.[28]

That said, and notwithstanding that state agency consultants assessed Cross as capable of work at a medium exertional level with certain modifications, the ALJ ultimately determined to "give [Cross] the benefit of the doubt" by limiting him to light work.[29]

After receiving the testimony of a vocational expert (VE), the ALJ found that Cross could not perform any of his past relevant work.[30] Again on the VE's testimony, the ALJ further found that, with the light work limitations in the RFC, jobs existed in significant number in the national and local economies that Cross could perform.[31] The ALJ made a similar finding on the basis of the VE testimony if Cross's RFC were further restricted to sedentary employment.[32]

Thus, the ALJ found that Cross not disabled and so ineligible for benefits.[33]

**C.    Issues raised**

Cross now raises several related issues arising out of his claims of mental impairment:

---

[27] *Id.*

[28] *Id*.

[29] *Id*. at 22.

[30] *Id.* at 23.

[31] *Id.*

[32] *Id*.

[33] *Id.* at 24.

1. Does substantial evidence support the ALJ's finding that Cross's impairment did not meet or equal Listings § 12.04 or § 12.08? [sic § 12.06]

2. Did the the ALJ commit reversible error by failing to make findings under Listing § 12.08?

3. Does substantial evidence support the ALJ's residual functional capacity finding as to the limitations caused by Cross's mental impairments?

    a. Did the ALJ commit reversible error by failing to call a medical expert for an opinion on Cross's mentally-related work limitations?

    b. Did the ALJ give appropriate weight to the opinion of the consultative psychologist?

    c. Did the ALJ commit reversible error by failing to order an updated consultative psychological evaluation?

    d. Does substantial evidence support the ALJ's credibility finding?

4. Did the ALJ commit reversible error by failing to include additional work-related limitations caused by Cross's mental impairments in the hypothetical posed to the vocational expert?[34]

## Analysis

**A.    Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact,

---

[34] ECF # 15 at 1.

> if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[35]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[36] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[37]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**B.     Application of standard**

As noted above, Cross raises several issues all connected to his claim of mental impairment. The individual issues will be addressed in sequence.

---

[35] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[36] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[37] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

*1.     Listings § 12.04 and § 12.06*

To meet the listing at § 12.04 for affective disorders, a claimant must either: (a) satisfy both the criteria in paragraph A (diagnostic) and paragraph B (marked limitations or difficulties) of that listing; or (b) satisfy the criteria in paragraph C (chronic condition of at least 2 years' duration with additional factors).[38]

Similarly, as to § 12.06, which addresses anxiety-related disorders, the listing is satisfied when the claimant satisfies both the requirements of paragraphs A and B, or if the provisions of paragraph C are met.[39]

The ALJ here specifically focused initially on Cross's mental impairment under paragraph B of both §§ 12.04 and 12.06.[40] As first concerns § 12.04, the ALJ found that Cross had only "mild restrictions of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decomposition."[41] Further, the ALJ found that the evidence did not support a finding that Cross met the criteria of paragraph C of this listing.[42]

---

[38] 20 C.F.R. Part 404, Subpt. P, App.1, § 12.04.

[39] *Id*. at § 12.06.

[40] Tr. at 14.

[41] *Id.*

[42] *Id*. at 14-15.

The ALJ gave significant weight to psychiatric review technique forms (PRTFs) completed in 2007 and 2008 by state agency reviewing psychologists.[43] The ALJ found these assessments "well reasoned" and "fully supported by the longitudinal medical evidence" as discussed in the consultants' notes in the RFC assessments.[44] Because, in the opinion of these psychologists, Cross's mental impairments do not cause at least two "marked" limitations, or one "marked" limitation and "repeated" episodes of decomposition, each of extended duration, the ALJ concluded that the criteria of paragraph B were not satisfied.[45]

For his part, Cross argues that the record shows he meets the paragraphs B and C criteria.[46] First, he contends that a GAF (Global Assessment of Functioning) score of 35, assigned in 2007 by consultative examiner Claudia Johnson Brown, Ph.D.,[47] necessarily means that he has "some impairment" in reality testing or communication, or "major impairment" in areas such as judgment, thinking, or mood.[48] Cross asserts that, because other parts of the record show depression and other difficulties, that evidence supports a finding that the GAF of 35 indicates a major impairment – not moderate – in judgment, thinking, and

---

[43] *Id*. at 15.

[44] *Id.*

[45] *Id*.

[46] ECF # 15 at 11-12.

[47] Tr. at 228-34.

[48] ECF # 15 at 11.

mood, and so would constitute a second "marked" impairment such as would meet the B paragraph criteria for Listing § 12.04.

But, as the Commissioner notes, such an argument would require the reviewing court to re-weigh the evidence before the ALJ by determining that the GAF score itself is "persuasive as to disability."[49] As the Sixth Circuit has observed, while GAF scores may assist in determining disability, they do not have "a direct correlation to the severity requirements of the mental disorder listings."[50] In fact, the Sixth Circuit has further noted that it is "'not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.'"[51]

In addition, the evidence on severity of mental impairments Cross cites as overlooked by the ALJ was, in fact, reviewed by state agency consulting psychologist Patricia Semmelman, Ph.D.[52] in an opinion reviewed by state agency consulting psychologist, Irma Johnston, Ph.D.[53] Those state agency reviews, in turn, formed the basis for the ALJ's conclusions that Cross did not meet the listings at issue.[54]

---

[49] ECF # 16 at 3.

[50] *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (citations omitted).

[51] *Id.* (quoting *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511, 2006 WL 305648, at **13-14 (6th Cir. Feb. 9, 2006)).

[52] Tr. at 243-45.

[53] *Id.* at 262.

[54] *Id.* at 15.

Similarly, for the reasons stated in the discussion concerning the status of GAF scores, if an ALJ is not required to "put stock in a GAF score in the first place,"[55] the mere presence of a GAF score of 35 does not mandate that the ALJ obtain additional medical testimony on whether the recipient of that score is actually disabled.[56]

Accordingly, substantial evidence supports the ALJ's findings that Cross did not meet or equal the listings for § 12.04 and § 12.06.

### 2. *The listing for § 12.08*

Cross here argues that, although no treating or reviewing medical source diagnosed him with a personality disorder under listing § 12.08, the ALJ nonetheless should have developed the facts relating to that listing and then addressed the issue in his opinion.[57]

The Commissioner, in reply, contends that the ALJ "could not have been expected to evaluate an impairment that had not been diagnosed."[58] The Commissioner further maintains that the state consulting psychologists considered such evidence as might support a finding of personality disorder, but determined that such evidence was not sufficient for Cross to meet the criteria of paragraphs A or B of listing § 12.08.[59]

---

[55] *DeBoard*, 211 F. App'x at 415.

[56] *See*, ECF # 15 at 12.

[57] *Id.* at 13.

[58] ECF # 16 at 3.

[59] *Id.* at 2-3.

The ALJ committed no error in not directly discussing whether Cross had an impairment that met or equaled the listing at § 12.08. First, as explained earlier, just as the GAF score of 35 did not require the ALJ to seek additional medical testimony concerning §§ 12.04 or 12.06, it also does not compel the ALJ to look for whether Cross was disabled under § 12.08. Next, although the ALJ, as an officer in an administrative proceeding and not a judge in a legal action, has a general duty to investigate the facts and develop the arguments both for and against the grant of benefits,[60] the Sixth Circuit teaches that a reviewing court will consider an issue waived if not first raised in the administrative proceeding.[61] Thus, a Social Security claimant will be deemed to have waived an assertion before the reviewing court that the ALJ failed to develop the administrative record where that argument was not asserted at the administrative level.[62]

Accordingly, the ALJ did not err by making no finding under the listing at § 12.08.

3. *The findings as to limitations caused by mental impairments*

Cross makes four related arguments as to this issue:

(a) the ALJ committed reversible error in not calling a medical expert;

(b) the ALJ erred in not giving appropriate weight to the opinion of Dr. Brown, a consultative psychologist;

(c) the ALJ erred by not ordering an updated consultative psychological examination; and

---

[60] *Sims v. Apfel*, 530 U.S. 103 (2000).

[61] *Maple v. Apfel,* 14 F. App'x 525, 537 (6th Cir. 2001) (citations omitted).

[62] *Id.*

    (d)    substantial evidence does not support the ALJ's credibility finding.

I will address these questions independently and in sequence.

    (a), (c)    <u>Calling another medical expert; getting an updated psychological exam</u>

As the Commissioner observes, the ALJ generally has the discretion to determine whether to seek additional expert testimony or to require an additional consultative examination.[63] Indeed, as the Sixth Circuit further indicates, "[t]he regulations do not require the ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a decision."[64]

Here, as discussed above, there was already one consultative psychological examination conducted in 2007 by Dr. Brown in the record.[65] In addition, the results of that examination were reviewed that same year by Dr. Semmelman.[66] Nonetheless, Cross, who bears the burden of proving disability,[67] and who was represented by counsel, did not seek to obtain, introduce, or request any new psychological examination from after 2007.

Because Cross proffered no additional evidence for the period subsequent to 2007, and because the existing evidence was enough on which to render a decision, the ALJ did not

---

[63] *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. § 404.1517).

[64] *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).

[65] Tr. at 228-34.

[66] *Id.* at 236-58.

[67] *Foster*, 279 F.3d at 353 (citation omitted).

abuse his discretion by relying on the evidence before him and not seeking additional medical testimony on the subject.

(b)     <u>Weight to Dr. Brown's opinion</u>

Cross here claims that because Dr. Brown was the only psychologist to examine him, the ALJ had no basis to discount Dr. Brown's opinion by reference to other medical sources who were not psychologists.[68]

The ALJ in this case presented an unusually thorough review of the medical evidence, with significant focus on the alleged mental health impairments.[69] In that review, the ALJ observed that "the record contains no record of treatment by a mental health professional."[70] Indeed, the record shows, as the ALJ noted, that Cross relied on Dr. Buch, Cross's treating physician, for treatment of his complaints of anxiety/depression from 2003 to 2006.[71] During this time, Dr. Buch treated Cross with medications that worked, but Dr. Buch noted that Cross stopped taking these medications when either he started to feel better or ran out of samples provided him at no cost.[72] As the ALJ further noted, Dr. Buch's treatment notes disclosed that Cross "refused to see a psychologist or psychiatrist" and stopped seeing

---

[68] ECF # 15 at 16.

[69] *See*, Tr. at 19-21.

[70] *Id.* at 19.

[71] *Id.* at 19-20.

[72] *Id*. at 19.

-14-

Dr. Buch in January, 2006, after Dr. Buch "questioned whether [Cross] might be selling his pain medication."[73]

With this background of the claimant's treating physician having extensive experience successfully treating Cross for anxiety/depression, and further recording that Cross affirmatively declined to seek an expert examination and also stopped seeing his treating physician after suspicions about sales of medication, it is curious that Cross's major argument is that the ALJ should not have used the findings of this treating source of nearly three years' experience as grounds for giving lesser weight to the opinion of a one-time examining source.[74]

The ALJ did extensively relate the medical evidence as it concerned the claimed mental impairment and found that the record did not support the conclusions of the one-time examiner.[75] But, the ALJ went further than noting disparities between the one-time examiner's findings that "relied heavily on [Cross's] subjective allegations" and those of a treating source grounded in clinical notes compiled over several years.[76] The ALJ also particularly noted that the consultative examiner's conclusions were also not borne out when considered together with other clinical findings such as: (1) Cross had been off all psychotropic medications for over a year when he saw Dr. Brown, and had received no

---

[73] *Id*. at 20.

[74] ECF # 15 at 16.

[75] Tr. at 20.

[76] *Id*.

mental health treatment during that time; and (2) that the record contains "no previous indication of any hallucinations or memory problems as alleged by [Cross] in the consultative evaluation."[77]

As such, by relying on multi-year observations of a treating source, as well as citations to factual inconsistencies in the existing record, the ALJ did ot impermissibly substitute his own lay opinion for that of medical professionals[78] but rather carefully articulated the reasons for assigning the opinion of a one-time examiner limited weight in deference to the clinical notes compiled over several years by a treating source.

Indeed, as the Sixth Circuit has observed, the treating physician doctrine, under which the findings of a treating source are to be accorded substantial deference, rests on the assumption that a medical professional who has dealt with a claimant "over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined the claimant but once," and done so only as part of the state agency review, not for the purpose of administering any treatment.[79] In such circumstances as obtained here with Dr. Brown, the Sixth Circuit is clear that the opinion of the consultative examiner is "entitled to no special degree of deference."[80]

---

[77] *Id*.

[78] *See*, ECF # 15 at 15.

[79] *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

[80] *Id*. (citation omitted).

Accordingly, the ALJ committed no error in assigning limited weight to the opinion of Dr. Brown.

(d)  Credibility finding

Cross contends that the ALJ cannot base a finding that he lacked credibility on behavior attributed to untreated mental illness.[81] Specifically, he argues that things such as refusing to seek treatment or stopping medication are "typical behaviors that exhibit mental health problems" and not a basis for discrediting his testimony as to the extent of his mental health impairments.[82]

In fact, the ALJ again was careful to specifically note that his finding of a lack of credibility was "not to say that the claimant did not have any mental problems but rather that his problems have not been at the level alleged at the hearing or at the consultative examination" conducted by Dr. Brown.[83] In that limited respect, the ALJ found objective evidence in the record to show that Cross's acknowledged mental condition: (1) improved when he took his medication; (2) was not so severe as to require any inpatient hospitalization or crisis stay; (3) did not compel Cross to seek a psychologist or psychiatrist; and (4) did not limit his daily functioning to a significant degree.[84] Moreover, the ALJ found that Dr. Buch's suspicion that Cross was selling his pain medication and Cross's history of incarceration,

---

[81] ECF # 15 at 16.

[82] *Id*. at 17.

[83] Tr. at 21.

[84] *Id*.

as well as his demeanor at the hearing, all "further diminish[ed] his credibility" as to the "nature and extent of his impairments" or "his symptoms and limitations."[85]

On this record, and mindful that the credibility determinations of the ALJ "are to be accorded great weight and deference,"[86] the determination of the ALJ in this matter, as more fully set forth above, that Cross was not entirely credible is supported by substantial evidence.

### *4.* *The hypothetical posed to the VE*

Cross maintains that the ALJ erred by not including more functional restrictions in the hypothetical question posed to the VE.[87] To that end, Cross cites to 12 specific limitations he contends are established at various places in the record and which, he asserts, should have been included in the hypothetical question posed to the VE.[88]

But, as the Commissioner observes, the ALJ needs to include in any hypothetical question to the VE only those limitations found to be credible and thus incorporated into the RFC.[89] Thus, where, as here, the ALJ properly incorporated his findings as to Cross's limitations into a determination of the RFC, and then, along with Cross's age, education, and past work experience, posed a hypothetical question to the VE as to jobs available, the

---

[85] *Id.* at 21-22.

[86] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

[87] ECF # 15 at 18.

[88] *Id.* at 19.

[89] *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) (citation omitted).

question is appropriate and any answer is valid.[90] Indeed, as the Sixth Circuit has said, under such circumstances, any additional limitations, such as those propounded here by Cross, "need not be considered."[91]

The ALJ, therefore, did not err in posing the hypothetical question to the VE without the limitations cited by Cross.

## Conclusion

For the foregoing reasons, I recommend that the decision of the Commissioner in this case be affirmed as supported by substantial evidence.

Dated: March 14, 2012                                     s/ William H. Baughman, Jr.
                                                          United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[92]

---

[90] *Id*.

[91] *Id.*

[92] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).